# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NATHAN WILLIAMS,

                                        Plaintiff

        v.

BRIAN E. WILLIAMS SR. et al.,

                                        Defendants

Case No. 2:18-cv-01363-APG-NJK

**SCREENING ORDER**

Plaintiff Nathan Williams, who is in the custody of the Nevada Department of Corrections (NDOC), has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. ECF Nos. 1-1, 3.  The matter of the filing fee shall be temporarily deferred.  I now screen Williams's civil rights complaint as required by 28 U.S.C. § 1915A.

## I.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

1    In addition to the screening requirements under § 1915A, the Prison Litigation Reform

2    Act (PLRA) requires a federal court to dismiss a prisoner's claim if "the allegation of poverty is

3    untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be

4    granted, or seeks monetary relief against a defendant who is immune from such relief." 28

5    U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can

6    be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the

7    same standard under § 1915 when reviewing the adequacy of a complaint or an amended

8    complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given

9    leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from

10   the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v.*

11   *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

12   Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v.*

13   *Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a claim

14   is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim

15   that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

16   In making this determination, the court takes as true all allegations of material fact stated in the

17   complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw*

18   *v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to

19   less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S.

20   5, 9 (1980).  While the standard under Rule 12(b)(6) does not require detailed factual allegations,

21   a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*,

22   550 U.S. 544, 555 (2007).  A formulaic recitation of the elements of a cause of action is

23   insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.*  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact.  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.      SCREENING OF COMPLAINT

In his complaint, Williams sues multiple defendants for events that took place while Williams was incarcerated at High Desert State Prison (HDSP). ECF No. 1-1 at 1.  Williams sues defendants Warden Brian E. Williams Sr., Sergeant Glenn Fowler, and NDOC.[1] *Id.* at 2. Williams alleges three counts and seeks injunctive and monetary relief. *Id.* at 7.

---

[1] I dismiss with prejudice all claims against NDOC because amendment would be futile.  NDOC is an arm of the State of Nevada and is not a "person" for purposes of 42 U.S.C. § 1983. *See Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Black v. Nevada Dep't of Corr.*, 2:09-cv-2343-PMP-LRL, 2010 WL 2545760, *2 (D. Nev. June 21, 2010).

The complaint alleges the following: during the summer of 2016, Williams was housed in a cell block unit without functioning air conditioning or ventilation. *Id.* at 3.  The National Weather Association issued multiple excessive heat warnings during the summer of 2016, and on multiple occasions during that summer, the temperature in Williams's unit exceeded 120 degrees. *Id.* at 3-4.  Williams experienced heat exhaustion as a result of the conditions. *Id.* at 4. NDOC staff worked on the ventilation unit while Williams was in his cell. *Id.*  The work on the ventilation unit created fumes and metal flakes that went into Williams's unventilated cell. *Id.* Williams Sr. and Fowler were aware of the conditions in the unit. *Id.*  Williams complained about the heat and the breathing conditions. *Id.*  On one occasion Williams Sr. yelled to the inmates in the unit that if they didn't like the heat they should not have come to that unit. *Id.* This gave Williams the impression that the conditions in the unit were some form of additional punishment. *Id.*

During the summer of 2016, the plumbing in the unit went out repeatedly. *Id.* at 5.  When the plumbing went out, raw sewage, including human waste, would gush under Williams's cell door. *Id.*  NDOC staff refused to clean up the raw sewage and did not provide Williams biohazard equipment to clean the sewage himself. *Id.*  As a result of the raw sewage, Williams has been diagnosed with hepatitis B. *Id.*  Williams Sr. and Fowler were aware of the conditions and could have housed Williams in a clean unit but did not do so. *Id.*

During the summer of 2016, Williams's unit was overrun with bugs. *Id.* at 6.  Williams was bitten by bugs over 100 times. *Id.*  NDOC staff promised Williams that they would provide him medical attention for the bug bites, but he never received any medical treatment. *Id.* Williams now has scars from the bug bites. *Id.*  Williams personally complained to Williams Sr.

and Fowler about the bugs and received a response that they would put in a work order to spray for bugs. *Id.*

Williams alleges that the conditions of his confinement, namely the lack of air conditioning and ventilation (Count I), the exposure to human waste (Count II), and the bug infestation (Count III) violated the Eighth Amendment.  The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  *Helling v. McKinney*, 509 U.S. 25, 31 (1993). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  However, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  When determining whether the conditions of confinement meet the objective prong of the Eighth Amendment analysis, the court must analyze each condition separately to determine whether that specific condition violates the Eighth Amendment. *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981).  As to the subjective prong of the Eighth Amendment analysis, prisoners must establish prison officials' "deliberate indifference" to the unconstitutional conditions of confinement to establish an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  When considering the conditions of confinement, the court should consider the amount of time to which the prisoner was subjected to the condition. *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent

1  them.  There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*,

2  556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to Bivens

3  and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

4  official's own individual actions, has violated the Constitution").

5      **A.      Count I**

6          Williams states a colorable Eighth Amendment claim based on the excessive heat and

7  lack of ventilation in his cell during the summer of 2016.  I liberally construe Williams's

8  complaint as alleging that for several months he was housed in a cell without functioning air

9  conditioning or ventilation.  The National Weather Association issued multiple excessive heat

10 warnings, and the temperature in Williams's unit exceeded 120 degrees on multiple occasions.

11 Work on the ventilation unit created fumes that went into Williams's unventilated cell, and

12 Williams suffered heat exhaustion as a result of the conditions.   Williams Sr. and Fowler were

13 aware of the conditions in the unit and had the ability to house Williams in a different unit but

14 did not do so.  This is sufficient to state a colorable claim on screening. *Cf. Vensor v. Schell*, 657

15 F. App'x 695, 697 (9th Cir. 2016) (concluding that extreme heat in a transport van, combined

16 with medical instructions for a prisoner not to eat or drink before transport, raised a dispute of

17 material fact as to whether the conditions in the transport van violated the Eighth Amendment).

18 This claim will proceed against Williams Sr. and Fowler.

19     **B.      Count II**

20         Williams states a colorable Eighth Amendment claim based on the allegation of raw

21 sewage gushing into his cell.  "[S]ubjection of a prisoner to lack of sanitation that is severe or

22 prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."

23 *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314, *opinion amended on denial of reh'g*, 75 F.3d 448

(9th Cir. 1995).  I liberally construe Williams's complaint as alleging that on multiple occasions the plumbing in his cell block unit went out and raw sewage, including human waste, gushed into his cell.  NDOC staff refused to clean the sewage and did not provide Williams with biohazard equipment to safely clean the sewage himself.  As a result of his exposure to raw sewage, Williams has been diagnosed with hepatitis B.  Williams Sr. and Fowler were aware of the conditions and could have housed Williams in a clean unit but did not do so.  This is sufficient to state a colorable claim on screening.  This claim will proceed against Williams Sr. and Fowler.

### C.    Count III

Williams states a colorable Eighth Amendment claim based on the bug infestation in his unit.  I liberally construe Williams's complaint as alleging that that he was bitten by bugs over 100 times during the summer of 2016 and that the bites were severe enough that they led to permanent scarring.  Williams personally informed Williams Sr. and Fowler about the bug issue. Williams Sr. and Fowler stated that they would put in a work order for bug spraying, but they did not put Williams in a safe cell, despite their ability to do so.  This is sufficient to state a colorable claim on screening.  This claim will proceed against Williams Sr. and Fowler.

To the extent that Williams intends to raise a separate claim based the lack of treatment for his bug bites, the Court dismisses this claim without prejudice.  Williams's complaint does not allege that Williams Sr. or Fowler were personally involved in the lack of medical treatment or aware of the lack of medical treatment.  As such, Williams has not stated a claim for relief against Williams Sr. or Fowler on the basis of a lack of medical treatment. *See Taylor*, 880 F.2d at 1045.

/ / / /

/ / / /

### III.    CONCLUSION

I order that a decision on the application to proceed *in forma pauperis* (ECF No. 3) is deferred.

I further order the Clerk of the Court to file the complaint (ECF No. 1-1) and send Williams a courtesy copy of the complaint.

I further order that Counts I, II, and III, alleging Eighth Amendment violations, will proceed against defendants Williams Sr. and Fowler.

I further order that to the extent that Williams intends to raise a claim based on a lack of treatment for his bug bites, that claim is dismissed without prejudice.

I further order that defendant NDOC is dismissed with prejudice from the entirety of the case as amendment would be futile.

I further order that given the nature of the claims that I have permitted to proceed, this action is **STAYED** for 90 days to allow Williams and the defendants an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the court lifts the stay, no other pleadings or papers shall be filed in this case, and the parties shall not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered to do so.  I will refer this case to the court's Inmate Early Mediation Program, and the court will enter a subsequent order.  Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General shall file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, an order will be issued setting a date for the

defendants to file an answer or other response.  Following the filing of an answer, a scheduling order will issue setting discovery and dispositive motion deadlines.

"Settlement" may or may not include payment of money damages.  It also may or may not include an agreement to resolve Williams's issues differently.  A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

I further order that if the case does not settle, Williams will be required to pay the full $350.00 filing fee.  This fee cannot be waived.  If Williams is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account. 28 U.S.C. § 1915(b). If Williams is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

I further order that if any party seeks to have this case excluded from the inmate mediation program, that party shall file a "motion to exclude case from mediation" on or before 21 days from the date of this order.  The responding party shall have seven days to file a response.  No reply shall be filed.

I further order that the Clerk of the Court shall electronically **SERVE** a copy of this order and a copy of Williams's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet.  This does not indicate acceptance of service.

I further order that the Attorney General's Office shall advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of

/ / / /

/ / / /

the defendants for the purpose of settlement.  No defenses or objections, including lack of

service, shall be waived as a result of the filing of the limited notice of appearance.

Dated:  September 10, 2019.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE