1

2

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

3   NATHAN WILLIAMS,                          Case No.: 2:18-cv-01363-APG-NJK

4          Plaintiff                         **Order (1) Denying Plaintiff's Motion for**
                                             **Summary Judgment, (2) Granting the**
5   v.                                       **Defendants' Motion for Summary**
                                             **Judgment, and (3) Granting Plaintiff's**
6   BRIAN E. WILLIAMS, SR. and GLENN         **Motion to Seal**
    FOWLER,
7                                            [ECF Nos. 48, 52, 65]
           Defendants
8

9          Nathan Williams (Williams) is an inmate at Southern Desert Correctional Center

10  (SDCC).  He sues defendant Brian E. Williams, Sr. (Warden Williams), who was SDCC's

11  warden during the relevant time, and sergeant Glenn Fowler (Fowler), a correctional officer at

12  SDCC.  After screening, Williams' remaining claims against Warden Williams and Fowler are

13  for three violations of the Eighth Amendment related to: (1) lack of air conditioning and

14  ventilation during the summer; (2) exposure to human waste when Williams' cell flooded; and

15  (3) a bug infestation in Williams' cell. ECF No. 5 at 6-7.  The defendants move for summary

16  judgment on all claims.  Williams moves for summary judgment on his claims related to the lack

17  of air conditioning and the flooded cell.  Finally, Williams moves to seal and redact portions of

18  the exhibits and summary judgment briefs because they reveal his private medical information.

19         The parties are familiar with the facts, so I repeat them here only as necessary to resolve

20  the pending motions.  I grant the defendants' motion for summary judgment and deny Williams'

21  motion for summary judgment because even viewing the evidence in the light most favorable to

22  Williams, no reasonable jury could find Warden Williams and Fowler were deliberately

23

indifferent to the conditions about which Williams complains.  I grant Williams' motion to seal, order certain documents sealed, and direct the parties to file publicly available redacted versions.

## I.  SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

Each of Williams' claims arises under the Eighth Amendment to the United States Constitution, which prohibits "cruel and unusual" punishment. U.S. Const. amend. VIII.  "To sustain an Eighth Amendment claim, the plaintiff must prove a denial of 'the minimal civilized measure of life's necessities,' . . . occurring through 'deliberate indifference' by prison personnel or officers." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Wilson v. Setter*, 501 U.S. 294, 302-03 (1991)).  Thus, a prisoner who

challenges his conditions of confinement must make two showings. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).  First, the plaintiff must make an objective showing that the alleged deprivation was "sufficiently serious" to rise to the level of an Eighth Amendment violation. *Id.* Second, the plaintiff must make a subjective showing that the prison official acted with a "sufficiently culpable state of mind," meaning the official acted with deliberate indifference. *Id.*; *Keenan*, 83 F.3d at 1089.

With respect to whether the deprivation was sufficiently serious, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Somers v. Thurman*, 109 F.3d 614, 623 (9th Cir. 1997) (simplified).  "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson*, 217 F.3d at 731.  "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred. The more basic the need, the shorter the time it can be withheld." *Id.* (simplified).

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*  Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

## A. Air Conditioning

In his complaint, Williams alleged that his cell was hot due to a broken air conditioner and lack of ventilation during the hot summer months. ECF No. 6 at 4.  Williams claimed this caused him to suffer heat exhaustion as well as breathing problems from fumes and metal flakes entering his cell during repair work. *Id.*  He alleged Warden Williams and Fowler were aware of these conditions but refused to house him in a different unit despite being able to do so. *Id.*

In April 2016, Williams was transferred to the B wing of unit 8 at SDCC. ECF No. 48-2 at 2.  According to Williams, inmates in unit 8 remain in their cells 23 hours per day. *Id.* Williams avers that shortly after he was transferred to the B wing, the air conditioning "experienced an ongoing malfunction that was not resolved until late August 2016." *Id.* at 3.  As a result, his cell got very hot. *Id.*  He also states that his cell was "filled with a noxious smell and small metal flakes were pushed into the air through the air vent." *Id.*

Williams filed informal grievances about the issue, but Williams has not pointed to evidence that either Warden Williams or Fowler saw or responded to the grievances. *See* ECF Nos. 48-8; 48-10 at 13-17.[1]  There is evidence, however, that Warden Williams and Fowler were generally aware of intermittent issues with the air conditioning in unit 8 during the summer of 2016. *See* ECF Nos. 48-1 at 29; 48-4 at 28-30.

Even viewing the evidence in the light most favorable to Williams, no reasonable jury could find that Warden Williams and Fowler were deliberately indifferent to the conditions.  The fact that the air conditioner intermittently was not working does not, by itself, raise a genuine

---

[1] Fowler testified that as a sergeant, he would handle informal grievances. ECF No. 48-4 at 17. However, it is unclear from the grievances and grievance history presented to the court whether Fowler responded to any of them. *See* ECF Nos. 48-8 through 48-10.  Fowler testified that he did not recall receiving a grievance from Williams related to the air conditioning. ECF No. 48-4 at 35-36.

dispute that Warden Williams and Fowler were deliberately indifferent.  The evidence shows that when the air conditioning was not working, it was repaired typically within a few days, but sometimes it took longer, particularly if new parts were needed. ECF Nos. 48-1 at 27-28; 48-7 at 5-8; 57-5 at 2-8.  In the meantime, 36-inch fans would be placed in the unit. ECF Nos. 48-1 at 28; 48-4 at 34-35.  Although Williams asserted in his complaint that the defendants could have moved him to a different cell to alleviate the problem, he points to no evidence that another, cooler cell was available.  Fowler testified that there was nowhere to move the inmates. ECF No. 48-4 at 35.

Further, there is no evidence that Warden Williams or Fowler knew about Williams' complaint that he was exposed to fumes or metal flakes in his cell during repairs. ECF No. 48-1 at 33-34 (Warden Williams does not recall hearing about any complaint of this nature and if he had, he would have deemed it an emergency and acted).  Williams does not point to any grievance that mentioned fumes or metal flakes or to evidence that he otherwise made either of the defendants (or anyone else) aware of the problem.  Consequently, no reasonable jury could find that Warden Williams and Fowler were deliberately indifferent to the lack of air conditioning or to the presence of fumes or metal flakes.  I therefore grant the defendants' motion for summary judgment and deny Williams' motion on this claim.

**B.  Flooding Cell**

In the complaint, Williams alleged that raw sewage, including human waste, gushed into his cell on several occasions. ECF No. 6 at 5.  He claimed that prison staff cleaned the common areas but did not clean up the sewage in his cell or provide him with the means to do so. *Id.*  He alleged that Warden Williams and Fowler were aware of these conditions and could have housed him in a clean cell but did not do so. *Id.*

Williams' declaration repeats some of these allegations.  He states that beginning on August 1, 2016, his cell was repeatedly flooded with wastewater from the unit's main drain. ECF No. 48-2 at 3.  He avers that although porters quickly cleaned the wastewater from the tier area, the porters did not clean inmates' cells until late August 2016, and he was not given additional cleaning supplies to clean his cell himself. *Id.*

Williams filed informal grievances about the plumbing problems, but did not specifically say that waste came into his cell; and he does not point to evidence that either Warden Williams or Fowler saw his grievances or were aware of waste in his cell. ECF Nos. 48-9; 48-10 at 13-17. There is evidence that the defendants were generally aware of plumbing problems in unit 8 caused by inmates flushing items down the toilet and by corroding pipes. ECF Nos. 48-1 at 36-37; 48-4 at 36-37.

However, even viewing the evidence in the light most favorable to Williams, no reasonable jury could find Warden Williams and Fowler were deliberately indifferent to the flooding.  The fact that the main drain occasionally flooded (usually due to inmates flushing items down the toilet) does not, by itself, raise a genuine dispute that Warden Williams and Fowler were deliberately indifferent.  By Williams' own declaration, the porters responded quickly to clean up the floods, and the repair records show that flooding complaints were usually resolved within 24 hours. ECF Nos. 48-2 at 3; 48-7 at 4-8.

Further, Williams points to no evidence that he filed a grievance or otherwise informed the defendants that the porters were not cleaning the cells or that he was not provided sufficient cleaning materials to clean his cell.  Rather, he complained about the plumbing problems and flooding generally, not the lack of adequate sanitation after the flooding. ECF Nos. 48-9; 48-10 at 13-17.  He points to no evidence that Warden Williams and Fowler were otherwise apprised of

the fact that the cells were not being cleaned or supplies were not being provided.  And he again points to no evidence that another cell was available.  Thus, no reasonable jury could find that Warden Williams and Fowler were deliberately indifferent to the flooding or a resulting lack of sanitation.  I therefore grant the defendants' motion for summary judgment and deny Williams' motion on this claim.

### C. Bug Infestation

In the complaint, Williams alleged that his cell was constantly infested with bugs. ECF No. 6 at 6.  He alleged that he was bitten by bugs in his cell over 100 times and that the bites were severe enough that they led to scarring.  *Id.*  He claimed that he informed Warden Williams and Fowler of this issue, and they promised to put in a work order for bug spray. *Id.*  Williams alleged that the defendants could have transferred him to a safe cell but did not do so. *Id.* Williams does not move for summary judgment on this claim and his declaration does not mention the bugs. *See* ECF No. 48-2.

Williams filed informal grievances about bugs, but he again does not point to evidence that either Warden Williams or Fowler saw those grievances. ECF Nos. 48-8; 48-10 at 13, 15, 17.  There is evidence that Warden Williams was generally aware of ant problems in unit 8. ECF No. 48-1 at 41, 43.  Fowler testified that he does not recall receiving a complaint about bugs in 2016. ECF No. 48-4 at 38.

Even assuming both defendants knew of bug problems in unit 8 in 2016, and even viewing the evidence in the light most favorable to Williams, no reasonable jury could find that Warden Williams and Fowler were deliberately indifferent to the conditions.  Warden Williams testified that the prison had a contract with an outside vendor to spray for bugs monthly, with each unit being sprayed quarterly. ECF No. 48-1 at 42.  If there were complaints about bugs in

the meantime, maintenance staff were sent to spray. *Id.* at 41.  Warden Williams also testified

that if he received grievances about ants, he would visit the unit to inspect the problem, would

make sure the exterminator came out, would use baits in the meantime, and would give inmates

the means to clean up their cells. *Id.* at 44.  Williams points to no evidence to refute Warden

Williams' testimony that the prison was regularly sprayed for bugs and that bug complaints were

responded to with appropriate remedial measures.  The fact that there were bugs or that Williams

allegedly was bitten by them does not raise a genuine dispute that Warden Williams or Fowler

were deliberately indifferent.  And Williams again points to no evidence that another cell was

available.  I therefore grant the defendants' motion for summary judgment on this claim.

## II.  MOTION TO SEAL

Williams moves to seal the parties' summary judgment briefs and exhibits, and to file

publicly available redacted versions because the filings reveal Williams' private medical

information.  Williams offers proposed redactions. ECF No. 65-1.  The defendants do not oppose

the motion.

A party seeking to seal judicial records on a dispositive motion bears the burden of

showing that "compelling reasons . . . outweigh the general history of access and the public

policies favoring disclosure . . . ." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-

79 (9th Cir. 2006).  Courts have recognized "the need to protect medical privacy" as a

compelling reason "for sealing records in connection with a dispositive motion." *Williams v.*

*Nev. Dep't of Corr.*, No. 2:13-cv-941-JAD-VCF, 2014 WL 3734287, at *1 (D. Nev. July 29,

2014).

Williams has shown a compelling reason to seal and redact the summary judgment

briefing because it discloses private medical information that is not necessary to reveal,

particularly given that my ruling on the parties' dispositive motions does not depend on discussing that information.  I therefore grant the motion to seal, direct the clerk to seal the relevant documents, and order the parties to file redacted, publicly available versions consistent with ECF No. 65-1.

**III.  CONCLUSION**

I THEREFORE ORDER that plaintiff Nathan Williams' motion for summary judgment **(ECF No. 48) is DENIED**.

I FURTHER ORDER that defendants Brian Williams, Sr. and Glenn Fowler's motion for summary judgment **(ECF No. 52) is GRANTED**.  The clerk of court is instructed to enter judgment in favor of the defendants and against the plaintiff, and to close this case.

I FURTHER ORDER that plaintiff Nathan Williams' motion to seal **(ECF No. 65) is GRANTED**.

I FURTHER ORDER the clerk of court to seal the following ECF Nos.: 48 (and all exhibits), 52, 57 (and all exhibits), 58, and 60 (and exhibit).

I FURTHER ORDER that by September 2, 2022, the parties shall file redacted, publicly available versions of those documents consistent with ECF No. 65-1.

DATED this 5th day of August, 2022.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE